IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **KERRON BROWN and JUSTIN MALLORY,** | : |
| Plaintiffs, | : |
| | : |
| v. | : CIVIL ACTION |
| | : FILE NO.: |
| **SIRCHIE ACQUISITION COMPANY, LLC,** | : |
| **CITY OF ATLANTA, GEORGIA, and CITY OF** | : |
| **DOUGLASVILLE, GEORGIA,** | : |
| Defendants. | : |

_____

## COMPLAINT

COMES NOW the Plaintiffs, by and through the undersigned attorney, Matthew Gebhardt, and for their cause of action against the Defendants states unto the Court as follows:

### PARTIES, VENUE AND JURISDICTION

1. That at all times material hereto; Plaintiff Kerron Brown was a resident of Douglasville, Georgia.

2. That at all times material hereto; Plaintiff Justin Mallory was a resident of Atlanta, Georgia.

3. Defendant SIRCHIE ACQUISITIONS COMPANY, LLC (hereinafter "Sirchie") is a limited liability company registered in Delaware with its Headquarters in Youngsville, North Carolina.  Defendant Sirchie produces Field Drug Presumptive Identification Kits which are marketed and sold to law enforcement agencies across the state of Georgia, including those sold to

Defendant City of Atlanta and Defendant City of Douglasville. Defendant Sirchie is subject to the jurisdiction and venue of this Court.

4. That at all times material hereto; Defendant CITY OF ATLANTA was a municipal corporation organized and existing under the laws of the State of Georgia and is responsible for the policies, practices, customs and regulations of the Atlanta Police Department, and for the hiring, training, supervising, and disciplining of agents, employees and police officers of the Atlanta Police Department. Defendant City of Atlanta may be served with process through its Mayor, Kasim Reed, at 55 Trinity Avenue, Atlanta, Georgia 30303.

5. That at all times material hereto; Defendant CITY OF DOUGLAS VILLE was a municipal corporation organized and existing under the laws of the State of Georgia and is responsible for the policies, practices, customs and regulations of the Douglasville Police Department, and for the hiring, training, supervising, and disciplining of agents, employees and police officers of the Douglasville Police Department. Defendant City of Douglasville may be served with process through its Mayor, Rochelle Robinson, at 6695 Church Street, Douglasville, Georgia 30134.

6. Venue and jurisdiction are proper in the Northern District of Georgia as Plaintiffs have raised both state and federal claims against Defendants as a result of incidents that took place in Atlanta and Douglasville which are located in the Northern District. Further, Plaintiffs' claims against out of state Defendant Sirchie are in excess of $75,000.

## **GENERAL ALLEGATIONS AND STATEMENTS OF FACT**

7. Plaintiffs' causes of action, both state and federal arise under the set of facts below. Plaintiffs plead state causes of actions for fraudulent and reckless misrepresentation, product liability, negligence, respondeat superior, and failure to train/supervise under Georgia common law and statutory law. Plaintiffs also plead federal causes of action pursuant to 42 U.S.C. §§1983 and 1988 against Defendants City of Atlanta and City of Douglasville for their failure to (1) properly train and supervise their employees and agents and (2) establish policies and procedures regarding using and verifying the results of field drug test kits. These failures led to Plaintiffs' illegal detention in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

8. Defendant Sirchie manufactures, sells and distributes the NARK II Presumptive Drug Test Kits.

9. The NARK II Drug Test Kits are designed to function as a "transportable narcotics laboratory," i.e. a field drug test kit.

10. Defendant Sirchie markets and misrepresents the NARK II Drug Test Kits as a valid test for whether or not something may or may not be a controlled substance.

11. Defendant Sirchie has for numerous years marketed the field drug test kits as being reliable and accurate to law enforcement agencies in Georgia and around the world.

12. Defendant Sirchie has actual and/or constructive knowledge that their field drug tests kits are inaccurate and unreliable.

13. Defendant Sirchie has actual knowledge that false positives can and do happen with their field drug test kits.

14. Defendant Sirchie has actual knowledge that they cannot eliminate false positives with their field drug test kits.

15. Defendant Sirchie has actual knowledge that law enforcement agencies rely upon their representations that their filed drug test kits are reliable.

16. Defendant Sirchie has actual and/or constructive knowledge that innocent people are wrongly incarcerated solely on the basis of inaccurate field drug test kits results.

17. Defendant Sirchie has actual and/or constructive knowledge that the wrongful incarceration of people can be lengthy due to the serious nature of the charges that follow a false positive, particularly those charged with drug trafficking.

18. Defendant Sirchie has actual and/or constructive knowledge that in the current digital age and the emphasis in the war on drugs, serious charges such as drug trafficking can stigmatize an innocent person for the rest of their life.

19. Defendant Sirchie continues to manufacture, sell and market these drug test kits as reliable, despite actual knowledge of the defects of the drug test kits and the irreparable damage that can be done to innocent members of the general

public because of those defects.

20.  Defendant Sirchie continues to profit from their drug test kits, despite their actual knowledge of significant defects in their field drug test kits that constitute a danger to the safety of the general public and a blatant disregard for the public's rights.

21.  Defendant Sirchie, as an afterthought, informs users that false positives cannot be eliminated and a forensic laboratory is required to identify an unknown substance.

22.  This warning, if intended to be one, is known by Defendant Sirchie to be ineffective to safeguard the general public from their defective drug test kits as Defendant Sirchie has actual knowledge that neither they nor the general public at risk have control over the timing of the required subsequent laboratory analysis.

23.  Defendant Sirchie also has actual knowledge that despite their marketing of these field drug test kits as reliable, Sirchie has no control over how these test kits are used and no control over the avoidance of contaminates that may impact the results.

24.  On January 19, 2014, Plaintiff Kerron Brown had his backpack searched by the Douglasville Police Department.

25. Plaintiff Brown had Niacin and vitamin B12 in his backpack.

26. The Douglasville Police Department did a field drug test on the Niacin and B12 using a NARK II Drug Test Kit manufactured and sold by Defendant Sirchie.

27. The NARK II Drug Test Kit showed the Niacin and B12 to be Methamphetamines and MDMA (Ecstasy).

28. Plaintiff Brown was charged with trafficking Methamphetamines and MDMA (Ecstasy) on the basis of the NARK II Drug test Kit results.

29. The Niacin and B12 were transferred to the GBI Forensic Laboratory on February 18, 2014 for the required follow up testing nearly 30 days after the field drug test registered a positive.

30. Plaintiff Brown was held in jail until the forensic laboratory test on March 27, 2014 showed the Niacin and B12 were not controlled substances and the charges were dropped.

31. On February 14, 2014, Plaintiff Justin Mallory had his vehicle searched by the Atlanta Police Department after a suspected DUI stop.

32. Plaintiff Justin Mallory had several baking ingredients and incense in his vehicle.

33. The Atlanta Police Department did a field drug test on the baking ingredients and incense using a NARK II Drug Test Kit manufactured and sold by Defendant Sirchie.

34. The NARK II Drug Test Kit showed the baking ingredients and incense to be Methamphetamines.

35. Plaintiff Mallory was charged with trafficking Methamphetamines on the basis of the NARK II Drug test Kit results.

36. The baking ingredients and incense were transferred to the GBI Forensic Laboratory on February 19, 2014, for the required follow up testing 5 days after the field drug test registered a positive.

37. Plaintiff Mallory was held in jail for 30 days before he was granted a bond. A forensic laboratory test on April 16, 2014 showed the baking ingredients and incense were not controlled substances and the charges were dropped.

38. Both Plaintiffs lost their jobs due to the lengthy incarceration and the seriousness of the charges.

39. Both Plaintiffs had their lives significantly disrupted and continue to be stigmatized as drug traffickers due to the erroneous field drug test results.

40. Plaintiffs are just two of many innocent people in the general public who have been and continue to be stigmatized as either a drug user or trafficker due to faulty field drug test results from the NARK II Drug Test Kit.

## Count I-Product Liability

41. Plaintiff incorporates paragraphs 1-40 as fully set forth herein.

42. Defendant Sirchie manufactures, sells and markets the NARK II Presumptive Drug Test Kit as a reliable and transportable narcotics laboratory.

43. Defendant Sirchie has actual knowledge their product is defective in design as they are unable to eliminate false positives on field drug test kits.

44. Defendant Sirchie has actual knowledge that its drug test kits will react to a wide variety of non-controlled substances.

45. Defendant Sirchie attempts to mitigate the impact of this design defect by warning users that "there is no drug identification system in use which completely eliminates the occurrence of false positives" and that "a forensic laboratory is required" to identify an unknown substance.

46. This warning is ineffective and insufficient because (1) the warning, as it is, is not directed at the class of people it is intended to protect, i.e. the general public; and (2) the general public has no mechanism to force law enforcement and prosecutors to heed the warning and get a timely confirmation of potential false positives.

47. Defendant Sirchie has actual and/or constructive knowledge that law enforcement personnel believe Sirchie's representations that their drug test kits are accurate.

48. Further, Defendant Sirchie has actual and /or constructive knowledge that innocent people have been wrongfully incarcerated as a direct result of their design and warning defects.

49. As a direct result of Defendant Sirchie's design defect and inadequate warning accompanying their drug test kits, Plaintiffs were unnecessarily incarcerated and suffered the following damages:

a. past and future mental and emotional distress as Plaintiffs were made to suffer great mental anguish, humiliation and disgrace as a result of their arrests, lengthy incarceration and labeling as a drug trafficker;

b. past and future loss of income due to stigmatization as a drug trafficker;

c. unlawful deprivation of their freedom and liberty in excess of 30 days;

d. loss of belongings while incarcerated; and

e. injury to their reputations.

## Count II-Fraudulent and Reckless Misrepresentation

50. Plaintiff incorporates paragraphs 1-49 as fully set forth herein.

51. Defendant Sirchie markets their NARK II Presumptive Drug Test Kit to law enforcement agencies as a reliable "transportable narcotics laboratory" in an attempt to encourage these agencies to use their test kit.

52. Defendant Sirchie has actual knowledge that these presumptive test kits are inaccurate and react to a number of non-controlled legal substances leading to the prolonged incarceration of innocent members of the general public including Plaintiffs.

53. Defendant Sirchie, in spite of this knowledge, continues to promote these presumptive tests as reliable and accurate to law enforcement agencies.

54. As a direct result of Defendant Sirchie's fraudulent and reckless misrepresentation to law enforcement agencies, Plaintiffs were unnecessarily incarcerated and suffered damages as outline in paragraph 49.

### Count III-Negligence

55. Plaintiff incorporates paragraphs 1-54 as fully set forth herein.

56. Defendant Sirchie has a duty to the general public not to make, market and sell a defective product (NARK II Presumptive Test Kit) that will cause harm to the general public and result in the incarceration of innocent people.

57. Defendant Sirchie breached that duty by making and selling a defective product (NARK II Presumptive Test Kit) when they had actual knowledge the product was defective and actual knowledge that innocent members of the general public would be incarcerated as a result of their product.

58. Defendant Sirchie's defective product as stated above was the sole proximate cause of Plaintiffs lengthy incarceration.

59. As a result of Defendant Sirchie's negligence, Plaintiffs were unnecessarily incarcerated and suffered damages as stated in paragraph 49.

### Count IV-Punitive Damages

60. By engaging in the above described conduct Defendant Sirchie's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences so as to entitle Plaintiffs to punitive damages pursuant to O.C.G.A. 51-12-5.1.

## **Plaintiff Mallory's State Law Claims against the City of Atlanta**

### **Count V-Negligence**

61. Plaintiffs incorporate paragraphs 1-60 as fully set forth herein.

62. Plaintiff Justin Mallory complied with all notice requirements under state law, sending ante litem notice to the City of Atlanta on July 25, 2014.

63. That on or about February 14, 2014, Defendant City of Atlanta's police officers had a duty to Plaintiff Mallory and the public in general to competently perform the ministerial functions assigned to them as a part of their job duties.

64. That on or about February 14, 2014, Defendant City of Atlanta's police officers negligently performed their ministerial functions, specifically by incorrectly conducting a field drug test and failing to verify the positive results in a timely manner.  This failure directly resulted in the damages suffered by Plaintiff Justin Mallory as outlined in paragraph 49.

### **Count VI-Vicarious Liability**

65. Plaintiffs reassert paragraphs 1-64 as fully set forth herein.

66. At all times relevant to this action, Atlanta police officers, were employed by Defendant City of Atlanta and were acting within the course and scope of their employment.

67. Defendant City of Atlanta is responsible for the conduct of its employees under the doctrine of respondeat superior, agency and/or apparent agency.

### Count VII-Failure to Train/Failure to Supervise

68. Plaintiff reasserts paragraphs 1-67 as fully set forth herein.

69. At all times relevant to this action, Atlanta police officers were employed by Defendant City of Atlanta.

70. Defendant City of Atlanta was negligent in supervising and/or training of its police officers by either 1) failing to train its police officers on the proper use of presumptive field drug tests or 2) failing to establish or implement a system or policy whereby positive presumptive tests are timely verified for accuracy.

71. As a result of Defendant City of Atlanta's failure to train, implement policy or failure to supervise, Plaintiff Mallory was unnecessarily incarcerated and suffered damages as stated in paragraph 49.

### Federal Claims Pursuant to Violations of Civil Rights Pursuant to Title 42 U.S.C. §1983

72. In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiffs of certain constitutionally protected rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States including, but not limited to: the right to be free from unreasonable seizures and the right not to be deprived of liberty without due process of law.

73. As a direct and proximate result of the violation of Plaintiffs' constitutional rights by the Defendants identified below, Plaintiff suffered damages as

previously alleged in paragraph 49 of this Complaint and is entitled to relief under 42 U.S.C §1983.

## Count VIII-Failure to Implement Appropriate Policies and Practices to Timely Verify Positive Presumptive Test Results

74. Plaintiffs incorporate paragraphs 1-73 as fully set forth herein.

75. Defendants City of Atlanta and City of Douglasville are responsible for the policies, practices, customs and regulations of their respective police departments.

76. Defendants City of Atlanta and City of Douglasville made the conscious decision to utilize NARK II Field Drug Test Kits as a part of their law enforcement operations.

77. When Defendants City of Atlanta and City of Douglasville made the conscious decision to utilize the NARK II Field Drug Test Kits, Defendants had actual and/or constructive knowledge that the NARK II kits were defective and unreliable and secondary testing was needed to confirm positive results.

78. Despite knowledge of the defects of the NARK II test kits, Defendants City of Atlanta and City of Douglasville failed to implement a policy requiring that NARK II test kits results be confirmed immediately to avoid unnecessary lengthy incarceration of suspects in the event of a false positive.

79. Defendants City of Atlanta and City of Douglasville had actual and/or constructive notice that their failure to implement a policy requiring NARK II test kits results be confirmed immediately would lead to the unnecessary danger

of an unlawful arrest and lengthy incarceration, specifically in cases of false positives from the NARK II kits.

80. This failure, amounts to deliberate indifference to the rights of persons with whom the respective police departments come into contact as significant constitutional rights violations are likely to occur in the form of unlawful arrests and lengthy incarceration, specifically in cases of false positive field test results.

81. Defendants City of Atlanta and City of Douglasville failure to implement a policy to immediately confirm field drug tests positive results creates the real concern that unlawful arrests and lengthy incarcerations could reoccur.

82. As a result of the failure to implement appropriate policies, Plaintiff suffered damages as previously alleged in paragraph 49 of this complaint and is entitled to relief under 42 U.S.C. §1983.

## Count IX-Failure to Train and/or Failure to Supervise

83. Plaintiff incorporates paragraphs 1-82 as fully set forth herein.

84. Defendants City of Atlanta and City of Douglasville are responsible for hiring, training, supervising, and disciplining of agents, employees and police officers of their respective departments.

85. Defendants City of Atlanta and City of Douglasville failed to supervise or train their police officers with regard to proper field drug testing and verification of positive results.

86. Defendants City of Atlanta and City of Douglasville had actual and/or constructive notice that their policy and training on the use and verification of

field drug test kits were deficient as they had actual knowledge the NARK II test kits were defective and unreliable.

87. This failure to implement a policy and train subordinates on how to conduct a filed drug test and to require positive results be confirmed immediately would lead to significant constitutional rights violations in the form of unlawful arrests or lengthy unlawful incarcerations, specifically in cases of false positives from the NARK II kits.

88. In Plaintiffs' cases, Defendants had actual knowledge that filed drug test kits are unreliable. Yet, Plaintiffs were arrested and incarcerated for in excess of 30 days before the forensic laboratory tests exonerated them.

89. Plaintiffs' lengthy incarcerations would have been avoided if Defendants City of Atlanta and City of Douglasville had implemented a policy or conducted training requiring their respective police departments to immediately confirm positive test results from field drug test kits.

90. Given Defendants City of Atlanta and City of Douglasville's actual knowledge of the defects and limitations of the NARK II field drug test kits, it is not reasonable to believe Defendants were unaware of the obvious deficiency of policy and training which resulted in Plaintiffs lengthy unlawful incarcerations.

91. As a result of these Defendants failure to implement policies and train regarding proper use and verification of field drug test kits, Plaintiffs suffered damages as previously alleged in paragraph 49 of this complaint and is entitled to relief under 42 U.S.C. §1983.

**WHEREFORE**, given the facts and circumstance above, Plaintiffs pray:

1. That judgment be rendered in favor of Plaintiffs and against the Defendants on all causes of action asserted herein;

2. That Plaintiffs be awarded those damages to which it may appear they are entitled to and proven in this matter;

3. That Plaintiffs be awarded punitive damages against those Defendants where appropriate and supported by evidence;

4. That Plaintiffs be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988;

5. That the Plaintiffs receive any other further and general relief to which it may appear they are entitled;

6. That Plaintiffs have a trial by jury.

*****

This certifies that the foregoing complaint was prepared with Times New Roman 14 point font in accordance with the Local Rules of this Court.

Respectfully Submitted,

/s/Matthew Gebhardt
Matthew Gebhardt
Georgia Bar#812697
Gebhardt Law Firm, LLC
1907 River Way
Jonesboro, Georgia 30236
(P)(404) 998-2234
(F)(888) 248-0767
matt@gebhardtlawfirm.com
**ATTORNEY FOR PLAINTIFF**